

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - x
 :
UNITED STATES OF AMERICA :
 :
            - v. -          : **SUPERSEDING INDICTMENT**
 :
FRED ELM, : S1 16 Cr. 356 (ER)
    a/k/a "Frederic Elmaleh," and :
AHMAD NAQVI, :
 :
            Defendants. :
 :
- - - - - - - - - - - - - - - - x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAY 1 6 2018
```

<u>COUNT ONE</u>
(Securities Fraud Conspiracy)

The Grand Jury Charges:

**Background**

1.  At all times relevant to this Indictment, Elm Tree Investment Advisors ("ETIA"), an investment manager formed in or about July 2012, was a Florida limited liability company with its principal place of business in Fort Lauderdale, Florida.  FRED ELM, a/k/a "Frederic Elmaleh," the defendant, was the founder and manager of ETIA, and AHMAD NAQVI, the defendant, was the chief operating officer of ETIA.

2.  At all times relevant to this Indictment, ETIA was the investment manager for four private investment funds -- Elm Tree Investment Fund, LP (the "Investment Fund"), Elm Tree Emerging Growth Fund, LP (the "Emerging Growth Fund"), Elm Tree 'e'Conomy Fund, LP (the "'e'Conomy Fund"), and Elm Tree Motion

Opportunity, LP (the "Motion Opportunity Fund," collectively the "Elm Tree Funds") -- each of which was a private investment limited partnership. FRED ELM, a/k/a "Frederic Elmaleh," the defendant, was the general partner and fund manager of each of the Elm Tree Funds, and AHMAD NAQVI, the defendant, was the chief operating officer of each of the Elm Tree Funds.

3.  At all times relevant to this Indictment, the Elm Tree Funds were Delaware limited partnerships with their principal places of business in Fort Lauderdale, Florida.

4.  At all times relevant to this Indictment, Twitter, Inc. ("Twitter") was a California-based online social media company. On or about November 6, 2013, Twitter's securities began trading under the symbol "TWTR" on the New York Stock Exchange ("NYSE"), which is based in New York, New York.

5.  At all times relevant to this Indictment, Alibaba Group Holding Limited ("Alibaba") was a Chinese e-commerce company. On or about September 19, 2014, Alibaba's securities began trading under the symbol "BABA" on the NYSE. At the time, Alibaba's initial public offering ("IPO") was the largest in history.

6.  At all times relevant to this Indictment, Square, Inc. ("Square") was a privately-held, California-based payment technology company.

7. At all times relevant to this Indictment, Uber Technologies, Inc. ("Uber") was a privately held, California-based transportation and logistics technology company.

8. At all times relevant to this Indictment, Pinterest, Inc. ("Pinterest") was a privately held, California-based photo-sharing company.

9. At all times relevant to this Indictment, GoDaddy Group, Inc. ("GoDaddy") was a privately-held, Arizona-based internet domain registrar and web hosting company.

10. At all times relevant to this Indictment, Kleiner Perkins Caufield & Byers ("Kleiner Perkins") was a California-based venture capital firm that invested in, among other companies, Twitter, Uber, and Square.

11. At all times relevant to this Indictment, Benchmark Capital ("Benchmark") was a California-based venture capital firm that invested in, among other companies, Twitter, Uber, and Snapchat.

12. At all times relevant to this Indictment, Silver Lake Management, L.L.C. ("Silver Lake") was a California-based venture capital firm that invested in, among other companies, Alibaba and GoDaddy.

### The Scheme to Defraud

13. From at least in or about June 2013 through in or about December 2014, FRED ELM, a/k/a "Frederic Elmaleh," and

AHMAD NAQVI, the defendants, perpetrated a scheme to defraud more than 50 investors out of approximately $17 million by soliciting investments in the Elm Tree Funds by making false and misleading representations, by failing to invest investors' funds as promised, by falsely reporting positive trading results and account balances, and by converting investors' money to their own use.

14.  FRED ELM, a/k/a "Frederic Elmaleh," and AHMAD NAQVI, the defendants, solicited investors in the Elm Tree Funds in two basic ways. Most investors purchased limited partnership interests in the Elm Tree Funds, pursuant to a subscription agreement and private placement memorandum. Other investors purchased promissory notes. ELM and NAQVI made various false and misleading representations in private placement memoranda, subscription agreements, in-person meetings, phone calls, and e-mails, including as set forth below:

a.  With respect to the Investment Fund, ELM and NAQVI falsely represented in private placement memoranda that the fund's "primary objective is to utilize equity stock and options strategies to safely and effectively maximize returns superior to comparative investment vehicles." They also guaranteed annual returns of 15 percent.

b.  With respect to the Emerging Growth Fund, ELM and NAQVI falsely represented in private placement memoranda

- 4 -

that the fund's "investment objective is to maximize total return on invested capital by seeking capital gains on equity and equity-related investments in privately-held Internet companies that are characterized by strong revenue growth and profitability or a clear path to profitability." ELM and NAQVI also falsely represented that the fund made pre-IPO investments in Twitter's Series F preferred shares. They also guaranteed returns of 338 percent.

   c. With respect to the 'e'Conomy Fund, ELM and NAQVI falsely represented in private placement memoranda that the fund's "investment objective is to maximize total return on invested capital by seeking capital gains on equity and equity-related investments in privately-held, high-growth, emerging Internet and mobile companies that are characterized by new, innovative and disruptive technologies." ELM and NAQVI also falsely represented that the fund made pre-IPO investments in (a) Alibaba's restricted ordinary shares; and (b) Square's Series C preferred shares. ELM and NAQVI said that the 'e'Conomy Fund's expected returns were 250 percent. ELM and NAQVI also falsely represented in promissory notes that the investment proceeds would be used "for the development and eventual commercial release of various internet properties."

   d. With respect to the Motion Opportunity Fund, ELM and NAQVI falsely represented in private placement memoranda

that the fund's "investment objective is to maximize total return on invested capital by seeking capital gains on equity and equity-related investments in privately-held, high-growth, emerging Internet and mobile companies that are characterized by new, innovative and disruptive technologies." ELM and NAQVI also falsely represented that the Motion Opportunity Fund made pre-IPO investments in (a) Uber's Series C-2 preferred shares; (b) Pinterest's Series D preferred shares; and (c) GoDaddy's Class B common shares. ELM and NAQVI said that the Motion Opportunity Fund's expected returns were 300 percent.

e. ELM and NAQVI falsely represented that they had relationships with leading venture capital firms, such as Kleiner Perkins, Silver Lake, and Benchmark, which gave them access to investments in privately-held, pre-IPO technology companies.

15. In truth and in fact, FRED ELM, a/k/a "Frederic Elmaleh," and AHMAD NAQVI, the defendants, ETIA, and the Elm Tree Funds never invested in privately-held, pre-IPO companies. Instead, ELM and NAQVI comingled the approximately $17 million that was invested in the Elm Tree Funds in a single investment account, and then invested only a portion of the money, approximately $7.1 million. At no point did any of the Elm Tree Funds return a profit. Instead, for example, between

approximately January 2014 and November 2014, the Elm Tree Funds lost approximately $3.9 million in trading.

16. Moreover, FRED ELM, a/k/a "Frederic Elmaleh," the defendant, routinely converted those investor funds that he and and AHMAD NAQVI, the defendant, did not lose in securities trading to ELM's own use in the form of cash withdrawals and to pay personal expenses, including to purchase a $1.75 million home, high-end furnishings, and other personal items, such as luxury automobiles, jewelry, and daily living expenses.

17. The conversion of investors' funds by FRED ELM, a/k/a "Frederic Elmaleh," the defendant, was contrary to the representations that ELM and AHMAD NAQVI, the defendant, made to investors concerning their and ETIA's fees. ELM and NAQVI falsely represented that they and ETIA would take a two percent annual management fee plus twenty percent of any profits that the Elm Tree Funds earned. In truth and in fact, ELM converted investor money that far exceeded the two percent management fee. Moreover, because the Elm Tree Funds never returned a profit, ELM, NAQVI, and ETIA were not entitled to a percentage of any profits.

18. FRED ELM, a/k/a "Frederic Elmaleh," and AHMAD NAQVI, the defendants, also used approximately $5.2 million of new investor funds to make payments to earlier investors in a Ponzi-like fashion.

19. To prevent or forestall redemptions, and continue to raise money to fund their scheme, FRED ELM, a/k/a "Frederic Elmaleh," and AHMAD NAQVI, the defendants, generated fictitious account statements and also made oral and written misrepresentations that their trading strategies were generating consistently positive returns.

20. In truth and in fact, as noted above, FRED ELM, a/k/a "Frederic Elmaleh," and AHMAD NAQVI, the defendants, only raised approximately $17 million from investors, of which they invested approximately $7.1 million and lost approximately $3.9 million in trading.

## Statutory Allegation

21. From at least in or about June 2013 through in or about December 2014, in the Southern District of New York and elsewhere, FRED ELM, a/k/a "Frederic Elmaleh," and AHMAD NAQVI, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

22. It was a part and an object of the conspiracy that FRED ELM, a/k/a "Frederic Elmaleh," and AHMAD NAQVI, the defendants, and others known and unknown, willfully and knowingly, directly and indirectly, by use of the means and

instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, would and did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, ELM and NAQVI, on behalf of ETIA and the Elm Tree Funds, solicited and caused to be solicited more than $17 million from investors by making false and misleading statements, failed to invest investors' funds as promised, falsely reported positive trading results and account balances, and converted some of the money to their personal use, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

### Overt Act

23. In furtherance of the conspiracy and to effect the illegal object thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

    a. In or about 2014, FRED ELM, a/k/a "Frederic Elmaleh," and AHMAD NAQVI, the defendants, met with a victim in New York, New York regarding an investment in one of the Elm Tree Funds.

  (Title 18, United States Code, Section 371.)

## COUNT TWO
### (Securities Fraud)

The Grand Jury further charges:

  24. The allegations contained in paragraphs 1 through 20 and 23 of this Indictment are hereby repeated, realleged, and incorporated by referenced as if fully set forth herein.

  25. From at least in or about June 2013 through in or about December 2014, in the Southern District of New York and elsewhere, FRED ELM, a/k/a "Frederic Elmaleh," and AHMAD NAQVI, the defendants, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, used and employed manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of

the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, ELM and NAQVI, on behalf of ETIA and the Elm Tree Funds, solicited and caused to be solicited more than $17 million from investors by making false and misleading statements, failed to invest investors' funds as promised, falsely reported positive trading results and account balances, and converted some of the money to their personal use.

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5;
Title 18, United States Code, Section 2.)

## COUNT THREE
### (Wire Fraud Conspiracy)

The Grand Jury further charges:

26. The allegations contained in paragraphs 1 through 20 and 23 of this Indictment are hereby repeated, realleged, and incorporated by referenced as if fully set forth herein.

27. From at least in or about June 2013 through in or about December 2014, in the Southern District of New York and elsewhere, FRED ELM, a/k/a "Frederic Elmaleh," and AHMAD NAQVI, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Section 1343.

28. It was a part and an object of the conspiracy that FRED ELM, a/k/a "Frederic Elmaleh," and AHMAD NAQVI, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, ELM and NAQVI, on behalf of ETIA and the Elm Tree Funds, solicited and caused to be solicited more than $17 million from investors by making false and misleading statements, failed to invest investors' funds as promised, falsely reported positive trading results and account balances, and converted some of the money to their personal use via e-mail and other interstate wires, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

## COUNT FOUR
### (Wire Fraud)

The Grand Jury further charges:

29. The allegations contained in paragraphs 1 through 20 and 23 of this Indictment are hereby repeated, realleged, and incorporated by referenced as if fully set forth herein.

30. From at least in or about June 2013 through in or about December 2014, in the Southern District of New York and elsewhere, FRED ELM, a/k/a "Frederic Elmaleh," and AHMAD NAQVI, the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, ELM and NAQVI, on behalf of ETIA and the Elm Tree Funds, solicited and caused to be solicited more than $17 million from investors by making false and misleading statements, failed to invest investors' funds as promised, falsely reported positive trading results and account balances, and converted some of the money to their personal use via e-mail and other interstate wires.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FIVE
(Failure to Appear)

The Grand Jury further charges:

31. The allegations contained in paragraphs 1 through 20 and 23 of this Indictment are hereby repeated, realleged, and incorporated by referenced as if fully set forth herein.

32. On or about June 16, 2017, and continuing thereafter, in the Southern District of New York and elsewhere, FRED ELM, a/k/a "Frederic Elmaleh," the defendant, having been released on bail pursuant to Chapter 207 of Title 18 of the United State Code in connection with a charge of an offense punishable by imprisonment for a term of 15 years and more, knowingly and willfully did fail to appear before the Court as required by the conditions of release, to wit, ELM failed to appear for a scheduled court appearance on June 16, 2017, and at any time thereafter, in connection with the case United States v. Fred Elm, a/k/a "Frederic Elmaleh," 16 Cr. 356 (ER).

(Title 18, United States Code,
Sections 3146(a)(1) and (b)(1)(A)(i).)

### FORFEITURE ALLEGATIONS

33. As the result of committing one or more of the offenses alleged in Counts One through Four of this Indictment, FRED ELM, a/k/a "Frederic Elmaleh," and AHMAD NAQVI, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title

28, United States Code, Section 2461, any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts One through Four of this Indictment.

Substitute Asset Provision

34. If any of the above-described forfeitable property, as a result of any act or omission of FRED ELM, a/k/a "Frederic Elmaleh," and AHMAD NAQVI, the defendants,

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property

of the defendants up to the value of the above forfeitable property.

>(Title 18, United States Code, Sections 981;
>Title 21, United States Code, Section 853;
>Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
GEOFFREY S. BERMAN
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

FRED ELM,
a/k/a "Frederic Elmaleh," and
AHMAD NAQVI,

Defendants.

SUPERSEDING INDICTMENT

S1 16 Cr. 356 (ER)

(15 U.S.C. §§ 78j(b), 78ff;
17 C.F.R. § 240.10b-5;
18 U.S.C. §§ 371, 1343, 1349, 3146, 2.)

A TRUE BILL

_____                              GEOFFREY S. BERMAN
Foreperson                                           United States Attorney